# UNITED STATE DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Burdette Theodore House,

Civ. No. 08-2917 (RHK/JJK)

           Plaintiff,

v.

Michael Campion, Commissioner of the
Department of Public Safety; Bruce
Andershon; and James M. Dudgeon,
Jr.;

**REPORT AND
RECOMMENDATION**

           Defendants.

---

Burdette Theodore House, 2404 Sheridan Avenue North, Minneapolis, MN,
55411, *pro se.*

Jeffrey S. Bilcik, Esq., Assistant Minnesota Attorney General, counsel for
Defendant Campion.

Robert D. Goodell, Esq., Assistant Anoka County Attorney, counsel for
Defendants Andershon and Dudgeon.

---

JEFFREY J. KEYES, United States Magistrate Judge

      This matter is before this Court on Commissioner Michael Campion's

Motion to Dismiss (Doc. No. 14), the Motion by Defendant Bruce Andershon to

Dismiss Complaint (Doc. No. 25), and the Motion by Defendant James M.

Dudgeon, Jr. to Dismiss Complaint (Doc. No. 27).  The case has been referred to

this Court for Report and Recommendation under 28 U.S.C. § 636 and D. Minn.

Loc. R. 72.1.  For the reasons discussed below, this Court recommends that the

motions be granted and that this action be dismissed in part without prejudice and dismissed in part with prejudice.

## BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 alleging that Defendants violated his federal constitutional rights.  His claims arise from an incident in which Defendant James Dudgeon, Anoka County Sheriff's Deputy ("Dudgeon"), stopped and arrested Plaintiff for driving under the influence of alcohol and administered two breath tests to determine Plaintiff's blood alcohol concentration. Plaintiff also asserts claims related to the subsequent revocation of his driver's license by Defendant Michael Campion, Commissioner of the Minnesota Department of Public Safety ("Campion").

On June 27, 2008, the Court issued an Order requiring Plaintiff to amend his Complaint.  (Doc. No. 3.)  On July 29, 2008, Plaintiff filed an Amended Complaint, which sets forth allegations against each of the three named Defendants.[1]  (Doc. No. 4, Am. Compl.)

---

[1]     In the June 27, 2008 Order, the Court instructed Plaintiff that if he elected to file an Amended Complaint, it "must contain factual allegations showing that the individual named Defendants violated the claimant's federal constitutional rights."  (Doc. No. 3 at 2.)  Plaintiff did amend, and, for the most part, set forth more specifically the allegations against each individual defendant.  However, at various stages of his Amended Complaint, Plaintiff makes other vague allegations of deprivations of constitutional rights.  For instance, he claims that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment but does not tie it specifically to the conduct of any Defendant.  (*See* Doc. No. 4, Am. Compl. ¶ 24.)  Plaintiff also asserts that Campion interprets Minnesota's implied consent law and that the law is unconstitutional on its face
(Footnote Continued on Following Page)

**I.      Plaintiff's Claims Related to Criminal Proceedings**

In the Amended Complaint, Plaintiff alleges that in the early morning on Sunday, April 27, 2008, Dudgeon stopped Plaintiff's automobile in Anoka, Minnesota.  (Am. Compl. ¶ 1.)  Plaintiff alleges that Dudgeon told him that he had been pulled over based on a report from an anonymous caller that Plaintiff's driving was "erratic."  (*Id.*)  Plaintiff claims that there was insufficient justification for Dudgeon to stop his vehicle, which resulted in a violation of Plaintiff's Fourth Amendment rights.  (*Id.*)  The Court hereinafter refers to this claim as Claim One.

Plaintiff alleges that after Dudgeon stopped his vehicle, Dudgeon subjected him to a field-sobriety and breath test.  (*Id.* ¶ 2.)  Plaintiff alleges that "Dudgeon cautioned Plaintiff, stating that failure to cooperate [with the test being administered] would result in automatic revocation of his driver's license for one year."  (*Id.*)  Plaintiff asserts that Dudgeon then transported him to the Anoka County Jail and subjected him to multiple breath tests on a "stationary intoxilyzer test unit[.]"  (*Id.* ¶ 7.)  Plaintiff states that Dudgeon "again, cautioned Plaintiff that refusal to cooperate would result in automatic revocation of his driver's license for a period of one year."  (*Id.*)  Plaintiff appears to claim that these events

_____

(Footnote Continued from Previous Page)
for failing to advise individuals of their federal constitutional rights, but fails to identify any specific allegation of constitutional deprivation by Campion.  (*See id.* ¶ 21.)  This Court cannot construe such vague allegations to have placed Defendants on notice of the Amended Complaint's assertions of wrongdoing. This Court has construed Plaintiff's Amended Complaint liberally, and the following recitation of Plaintiff's claims fairly represents such a reading.

violated his Fifth Amendment right to be free from compelled self-incrimination.
(*Id.* ¶¶ 2, 7, 9.)  This Court hereinafter refers to this claim as Claim Two.

Plaintiff next alleges that at the time of the stop, Dudgeon failed to advise
him of his right to be represented by legal counsel, "prior to questioning and
testing, a deprivation of due process, Sixth Amendment, U.S. Constitution." (Am.
Comp. ¶ 2.)  He further alleges that following his arrest, Dudgeon transported him
to Anoka County Jail, where "Dudgeon permitted Plaintiff the use of a telephone
to call an attorney." (*Id.* ¶ 5.)  Plaintiff made several phone calls and managed to
speak with an attorney, but "Plaintiff did not have money to pay for legal counsel
fees and the attorney would not come to the jail to consult with Plaintiff." (*Id.*)
Plaintiff then requested a copy of Minnesota's implied consent law, "but . . .
Dudgeon did not respond." (*Id.*)  Plaintiff claims that these interactions violated
his right to counsel under the Sixth Amendment.  (*Id.* ¶¶ 2, 5.)  This Court
hereinafter refers to this claim as Claim Three.

Plaintiff alleges that due to his doubts about the accuracy of a breath test
in light of his multiple respiratory issues such as asthma, allergies, and chronic
bronchitis, he requested that Dudgeon administer a blood test rather than a
breath test.  (*See id.* at ¶ 4.)  "Defendant Dudgeon, however, did not answer or
respond." (*Id.*)  It appears that Plaintiff claims Dudgeon's failure to grant his
request that he be given a blood test violated his Fifth Amendment right to be
free from compelled self-incrimination.  (*See id.* ¶ 7 ("Plaintiff would be entitled to
a series of blood, breath and urine testing.  Defendant Dudgeon subjected

4

Plaintiff to forced self incrimination.").)  Plaintiff also alleges that Dudgeon did not transport him to a nearby hospital for testing purposes.  (Am. Compl. ¶ 6.)  And he claims that this "deprived him of fairness, a due process requirement[.]"  (*Id.*) This Court hereinafter refers to this claim as Claim Four.

Plaintiff further alleges that following Dudgeon's administration of the breath test, Dudgeon "neglected and failed to schedule Plaintiff to appear for a more reasonable and earlier arraignment" when he filled out a summons form requiring Plaintiff to appear in court on June 2, 2008.  (*Id.* ¶¶ 10, 11.)  Plaintiff claims that this delay deprived him of "timely judicial due process protection[.]" (*Id.* ¶ 11.)  He also appears to assert that this delay violated his right to a speedy trial.  (*Id.* ("Plaintiff has not waived his right to a speedy trial.").)  This Court hereinafter refers to this claim as Claim Five.

Plaintiff alleges that Defendant Bruce Andershon, Anoka County Sheriff, "is responsible and shares responsibility for the actions and/or inactions of subordinate peace officers and other personnel employed with the Anoka County Sheriff's Office."  (Am. Compl. ¶ 13.)  Plaintiff asserts that Andershon is responsible for Dudgeon's refusal to permit Plaintiff to review Minnesota's implied consent law (*see id.* ¶¶ 5, 13), and that Andershon "is responsible for providing pro se prisoners with timely access to a law library."  (*Id.* ¶ 13.)  Plaintiff claims that these actions deprived him of due process under the Sixth Amendment.  (*Id.*) This Court hereinafter refers to this claim as Claim Six.

## II.    Plaintiff's Claim Related to Administrative Proceedings

Plaintiff alleges that his "driver's license was revoked upon initiation of Defendant Dudgeon's report."  (*Id.* ¶ 20.)  Plaintiff asserts that after he was released from Anoka County Jail, Campion "assumed responsibility for the process and subjected Plaintiff to punishment without the benefit of due process[.]"  (*Id.* ¶ 12.)  Plaintiff further asserts that Campion denied him the "opportunity to confront, examine and contest, under oath, any adverse testimony or evidence that had been lodged against him."  (*Id.* ¶ 20; *see also id.* ¶ 14 (same).)  It appears that Plaintiff claims he was entitled to an in-person hearing, which he was not provided, to contest the revocation of his license.  This Court hereinafter refers to this claim as Claim Seven.

Plaintiff also claims that by revoking Plaintiff's license, "Campion seized Plaintiff's driver's license and property, a prohibition of the Fourth Amendment." (*Id.* ¶ 16.)  This Court hereinafter refers to this claim as Claim Eight.

Finally, Plaintiff claims that the requirement that he pay reinstatement and other fees to renew his license are "excessive fine[s] prohibited by the Eighth Amendment, U.S. Constitution."  (*Id.* ¶ 18.)  This Court hereinafter refers to this claim as Claim Nine.

## DISCUSSION

## I.    Standard of Review

Defendants have moved to dismiss Plaintiff's Amended Complaint on several grounds.  In deciding a motion to dismiss, a court assumes all facts in the

complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964-65. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965.

## II. Legal Analysis

### A. *Younger* Analysis

Campion and Dudgeon move to dismiss the Amended Complaint without prejudice based on the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 36 (1971). Where there are ongoing state judicial or administrative proceedings, there is a strong policy against the exercise of federal jurisdiction. *See id.* at 43-44 (discussing the long history of permitting "state courts to try cases free from interference by federal courts" and the "sensitivity to the legitimate interests of both State and National Governments" in the nation's

7

concept of federalism).  "Abstention is proper if there is an ongoing state judicial proceeding, the proceeding implicates important state interests, there is an adequate opportunity in the state proceedings to raise constitutional challenges, and in the absence of 'bad faith, harassment, or other exceptional circumstances.'"  *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 602 (8th Cir. 1999) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Here, there is no ongoing judicial proceeding because Plaintiff has been convicted by a jury on the two criminal charges underlying this matter (Pl.'s Pet. ¶ 17), and his time for appeal has already expired.  Pursuant to Minnesota Rule of Criminal Procedure 28.02, subd. 4(3), the time for appeal from final judgment in a misdemeanor case is 10 days.  The time for appeal begins to run "when there is a judgment of conviction upon the verdict of a jury . . . and sentence is imposed or the imposition of sentence is stayed."  Minn. R. Crim. P. 28.02, subd. 2(1).  On March 3, 2009, Plaintiff was sentenced for a misdemeanor conviction under Minn. Stat. § 169A.20, subd. 1(5), for driving while impaired and having a test result showing an alcohol concentration of 0.08 or higher within two hours of operating a motor vehicle.  *See State of Minn. v. Burdette Theodore House*, Case No. 02-CR-08-5786 (Minn. D. Ct. filed May 12, 2008), http://pa.courts.state.mn.us/CaseDetail.aspx?CaseID=1611774344.  That same day, imposition of the sentence was stayed.  *Id.*  Thus, under Minn. R. Crim.

P. 28.02, Plaintiff's opportunity to appeal the outcome of his criminal case in state court has expired and application of *Younger* abstention is not appropriate.[2]

### B.  *Heck* Analysis

Dudgeon has moved to dismiss Plaintiff's claims against him based on the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 475 (1996).  In *Heck*, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Id.* at 486-87.  The Court further explained that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487.  In those cases where judgment would result in such an outcome, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has been invalidated." *Id.*  Claims dismissed pursuant to *Heck* should be dismissed without prejudice so that plaintiffs can bring their claims again, in a new action, if they are able to establish that a

---

[2]      The Court notes that Defendants gave scant attention to Minn. R. Crim. P. 28.02 in their briefing and arguments, and represented to the Court at the May 5, 2009 hearing that the time for appeal from Plaintiff's conviction was 90 days from the date of his sentence.  Therefore, this Court's analysis on this issue has been reached largely without the benefit of any guidance from the parties.

conviction is illegal.  *See Perkins v. Anderson*, Civ. No. 06-4021 (PAM/FLN),

2006 WL 3392787, at *4 n.5 (D. Minn. Nov. 21, 2006).  To clarify, this means that

proving the illegality of the conviction may be accomplished *in a future action* for

damages, but a plaintiff may only overcome the *Heck* bar if he can demonstrate

"that the conviction or sentence has been reversed on direct appeal, expunged

by executive order, declared invalid by a state tribunal authorized to make such

determination, or called into question by a federal court's issuance of a writ of

habeas corpus[.]"  *Heck*, 512 U.S. at 486-87.

### 1.    Claim One – Unlawful-Stop Claim

Claim One should be dismissed without prejudice pursuant to *Heck*.  In

Claim One, Plaintiff asserts that his Fourth Amendment rights were violated when

his vehicle was stopped by Dudgeon based on the tip of an anonymous caller.

Despite the general rule announced in *Heck*, suits premised on an alleged Fourth

Amendment violation "may lie even if the challenged search produced evidence

that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still

outstanding conviction."  *Heck*, 512 U.S. at 487 n.7.  "Because of doctrines like

independent source and inevitable discovery . . . , and especially harmless

error . . . , such a § 1983 action, even if successful, would not *necessarily* imply

that the plaintiff's conviction was unlawful."  *Id.*  Because *Heck* did not create a

categorical rule that all § 1983 claims based on alleged Fourth Amendment

violations are to be treated the same, courts have taken a case-by-case

approach to determine whether an "unreasonable seizure might negate the

element of the offense" for which the plaintiff was convicted.  *See, e.g.*, *Hughes v. Lott*, 350 F.3d 1157, 1161 n.2 (11th Cir. 2003) (citing *Heck*, 512 U.S. at 487 n.6, where the Court discussed the negation of an essential element of an offense for which a § 1983 plaintiff was convicted as a circumstance in which "the § 1983 action will not lie").  "Thus, the court must look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted."  *Id.*

Here, were Plaintiff to succeed on his § 1983 claim that Dudgeon violated the Fourth Amendment by stopping his vehicle without the appropriate degree of suspicion, the evidence obtained subsequent to that stop—the results of Plaintiff's breath tests—would be suppressed.  As discussed above, the specific offense for which Plaintiff was convicted and sentenced was a misdemeanor conviction under Minn. Stat. § 169A.20, subd. 1(5), for driving while impaired and having a test result showing a blood alcohol concentration of 0.08 or higher within two hours of operating a motor vehicle.  Thus, suppression of the test results reflecting Plaintiff's blood alcohol concentration would negate an element of the offense for which he was convicted.  Under these circumstances, Claim One should be dismissed without prejudice according to *Heck*.

### 2.    Claim Two – Self-Incrimination Claim

Claim Two should be dismissed without prejudice pursuant to *Heck*.  In Claim Two, Plaintiff asserts that his Fifth Amendment rights to be free from compelled self-incrimination were violated when he was informed that refusal to

consent to a breath test would result in automatic revocation of his driver's license.  As with Claim One, were Plaintiff to succeed on such a Fifth Amendment claim, the evidence comprising the results of his breath tests would have been suppressed in the state court.  Thus, Claim Two should be dismissed because the suppression of such evidence would negate an element of the offense for which Plaintiff was convicted and sentenced.[3]

### 3.   Claim Three – Right-to-Counsel Claim

Claim Three should be dismissed without prejudice pursuant to *Heck*.  In Claim Three, Plaintiff asserts that his Sixth Amendment right to counsel was violated when he did not have the benefit of face-to-face consultation with an attorney before submitting to the first breath test at the time of the stop and the second breath test at the Anoka County Jail.  Were Plaintiff to succeed on such a claim, the results of his breath test would have been suppressed and thus negated the State's proof of an element of the crime of which Plaintiff was convicted.  For this reason, Claim Three should be dismissed without prejudice.[4]

---

[3]     Even if Claim Two were not dismissed without prejudice pursuant to *Heck*, this Court notes that the administration of a breath test in the absence of *Miranda* warnings does not constitute testimonial incrimination as proscribed by the Fifth Amendment.  *See South Dakota v. Neville*, 459 U.S. 553, 564 n.15 (1983) (noting that "in the context of an arrest for driving while intoxicated, a police inquiry whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*"); *cf. Williams v. Schario*, 93 F.3d 527, 528 (8th Cir. 1996) (noting that a § 1983 plaintiff's *Miranda* claim based on fingerprinting without proper warnings lacked merit).

(Footnote Continued on Following Page)

### 4. Claim Four – Failure-to-Provide-Blood-Test Claim

Claim Four should be dismissed without prejudice pursuant to *Heck*. In Claim Four, Plaintiff asserts that his Fifth Amendment rights to be free from self-incrimination and to receive fundamental fairness (or due process), were violated because he was not given the option of taking a blood test instead of a breath test. Again, were Plaintiff to succeed on this claim that his rights were violated by Dudgeon's refusal to administer the alcohol-concentration test of Plaintiff's choice the results of his breath test would be suppressed for the Fifth Amendment violation, and the charges against him would be dismissed for the due process violation. This would necessarily impugn the validity of his conviction, making dismissal without prejudice pursuant to *Heck* appropriate for this claim.

### 5. Claim Five – Delay-in-Arraignment Claim

---

(Footnote Continued from Previous Page)

[4] Even if Claim Three were not dismissed without prejudice pursuant to *Heck*, this Court notes that the right to counsel under the Sixth and Fourteenth Amendments does not attach until formal adversary judicial proceedings have begun against a person. *See Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (noting that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him"). On the face of the Amended Complaint, at the time Dudgeon permitted Plaintiff to contact an attorney by telephone, Plaintiff had not yet been cited for any offense (Am. Compl. ¶¶ 1-5), nor had any other action taken place that amounts to a critical stage under federal constitutional law. *See Mattson v. Becker County, Minn.*, Civ. No. 07-1788 (ADM/RLE), 2008 WL 3582781, at *5 (D. Minn. Aug. 12, 2008) (concluding that chemical testing in DWI investigations does not trigger the Sixth Amendment right to counsel because such right does not attach until the commencement of formal judicial proceedings).

Claim Five should be dismissed without prejudice pursuant to *Heck*. In Claim Five, Plaintiff asserts that he was denied due process of law when Dudgeon set the date for his first court appearance as June 2, 2008, because Dudgeon should have scheduled the appearance sooner. "[A] defendant may invoke due process to challenge delay both before and after official accusation." *Doggett v. United States*, 505 U.S. 647, 655 n.2 (1992). It is at least arguable that a due process violation based on delay in bringing charges could result in dismissal of the charges against an individual. *Cf. United States v. Lovasco*, 431 U.S. 783, 789-90 (1977) (noting that it was not necessary to "determine when and in what circumstances actual prejudice resulting from preaccusation delays requires dismissal of the prosecution"). Because such a remedy of dismissal would necessarily undermine the conviction, this Court recommends dismissal of this claim without prejudice pursuant to *Heck*.[5]

Plaintiff also bases this claim on his assertion that he was denied his Sixth Amendment right to a speedy trial. The Sixth Amendment guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial." U.S. Const., amend. VI. If a defendant is denied the right to a speedy trial,

---

[5]      This Court notes, however, that to prevail on a claim that delay in charging violated his due process, Plaintiff must show that his defense has been substantially prejudiced by an unreasonable delay. *See Bennett v. Lockhart*, 39 F.3d 848, 851 (8th Cir.1994). In the Amended Coplaint, Plaintiff has not plead any facts from which it can be inferred that he suffered any "actual prejudice." *See id.*

the remedy is dismissal.  *See United States v. Elmardoudi*, 501 F.3d 935, 943 n.7 (8th Cir. 2007) ("The Supreme Court has said that the only possible remedy for a Sixth Amendment speedy trial violation is dismissal.").  Because dismissal would necessarily undermine the conviction, this Court recommends dismissal of this claim without prejudice pursuant to *Heck*.[6]

### 6.    Claim Six – Supervisory-Liability Claim Against Andershon

Claim Six should also be dismissed without prejudice pursuant to *Heck*.  In Claim Six, Plaintiff asserts that Andershon violated his constitutional rights by being responsible for the conduct of the Anoka County Sheriff's Department employees.  Thus, Plaintiff asserts a supervisory liability claim against Andershon, which is only cognizable insofar as Plaintiff's claims against Dudgeon survive.  Since this Court has recommended that all claims against Dudgeon be dismissed without prejudice pursuant to *Heck*, this Court recommends dismissal of Claim Six.

### C.    Analysis of Plaintiff's Due Process Claim against Campion

### 1.    Claim Seven – Failure-to-Provide-Hearing Claim

---

[6]      This Court notes, however, that to resolve Plaintiff's speedy-trial claim, a court would have to address the following factors: (1) whether the delay was uncommonly long; (2) what was the reason for delay; (3) whether Plaintiff asserted the speedy-trial right; and (4) whether Plaintiff was prejudiced.  *See Barker v. Wingo*, 407 U.S. 514, 530-32 (1972).  At a minimum, Plaintiff has failed to plead any facts from which it can be inferred that he asserted his right to a speedy trial.

Campion moves to dismiss Plaintiff's assertion that Campion violated his due process rights by revoking his driver's license without providing him a hearing.  Campion argues that Plaintiff has failed to state a claim because Plaintiff is "complaining that his due process rights were violated because he elected to forego a remedy available to him."  (Campion Mem. 9.)  Plaintiff argues that his due process rights were violated when his driver's license was revoked, but does not explain precisely what was deficient about the process he received.  It appears that Plaintiff contends that he should have received an in-person hearing prior to the revocation of his license.  (*See* Am. Compl. ¶ 20 ("Plaintiff was not provided a judicial or administrative hearing.  Plaintiff was not afforded an opportunity to confront, examine and contest, under oath, any adverse testimony or evidence that had been lodged against him.").)

The Fourteenth Amendment protects any person from state deprivation of "life, liberty, or property, without due process of law."  U.S. Const. Am. XIV.  "The procedural component of the Due Process Clause protects property interests created not by the Constitution but by 'rules or understandings that stem from an independent source such as state law.'"  *Neal v. Fields*, 429 F.3d 1165, 1167 (8th Cir. 2005) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).  The Due Process Clause applies to a state's suspension or revocation of a driver's license as explained by the Supreme in *Bell v. Burson*, 402 U.S. 535, 539 (1971):

> Once licenses are issued, . . . their continued possession may
> become essential to the pursuit of a livelihood.  Suspension of
> issued licenses thus involves state action that adjudicates important
> interests of the licensees.  In such cases, the licenses are not to be
> taken away without that procedural due process required by the
> Fourteenth Amendment.

*Id.*

Although this case does involve an interest protected by the Due Process Clause, this Court concludes that Petitioner has failed to state a claim that he was deprived of the procedural due process required by the Fourteenth Amendment.  Minnesota law provides Plaintiff an adequate opportunity to be heard.  Plaintiff simply did not take advantage of the opportunity under Minnesota law to obtain an in-person hearing before a judge once his driver's license had been revoked for failing a breath test.  *See* Minn. Stat. § 169A.53, subd. 2. Reading the Amended Complaint in the light most favorable to Plaintiff, he forwent this opportunity because he did not have sufficient funds to pay the filing fee.  (Am. Compl. ¶ 17.)[7]  The State's requirement of a filing fee does not itself amount to a due process violation.  *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982) (noting that states "may erect reasonable procedural requirements for triggering the right to an adjudication" including "in an appropriate case, filing fees").

---

[7]     There is no indication in the Amended Complaint or in Plaintiff's supporting papers that he sought to proceed *in forma pauperis* in his attempt to obtain judicial review of the revocation decision.  *See* Minn. Stat. § 563.01, subd. 3 (providing that any Minnesota court may allow an individual to proceed without prepayment of fees upon the appropriate showing of inability to pay the fees).

In addition the provision of a postdeprivation hearing by Minnesota law does not violate the Due Process Clause.  The Supreme Court has "described the 'root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).  But in certain circumstances, "a postdeprivation hearing will satisfy due process requirements."  *Id.* at 542 n.7.  One such instance where a postdeprivation hearing is permissible is where a state suspends or revokes a driver's license upon learning of the driver's refusal to consent to a breath test for driving under the influence of intoxicating liquors.  *See Mackey v. Montrym*, 443 U.S. 1, 19 (1979) (holding that it was permissible for the state to make "a summary suspension [of a driver's license] effective pending the outcome of the prompt postsuspension hearing").

Under Minnesota law, once a driver fails a breath test, a peace officer must report such failure to the Commissioner of Public Safety, who, in turn, must revoke the driver's license to drive for a specific period of time.  Minn. Stat. § 169A.52, subd. 4.  Minnesota law further provides that within 30 days following receipt of a notice and order of revocation a person may petition the court for review for a hearing before a judge.[8]  Minn. Stat. § 169A.53, subds. 2 & 3

---

[8]     Minnesota Statutes section 169A.53, subd. 1, also provides for administrative appeal of the revocation but does not involve an in-person hearing.  However, "[t]he availability of administrative review for an order of

(Footnote Continued on Following Page)

(providing time for filing petition and the scope of the review).  The constitutional permissibility of a postdeprivation hearing in the context of test refusal is equally applicable where, as here, the individual fails a test to which he has consented. *See Mackey*, 443 U.S. at 11-19 (weighing factors established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and concluding that postdeprivation hearing was constitutionally adequate).  Thus, this Court recommends that Plaintiff's Due Process claim regarding Campion's alleged failure to provide Plaintiff an opportunity to be heard be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 2.    Claim Eight – Seizure-of-License Claim

In Claim Eight, Plaintiff asserts that his Fourth Amendment right to be free from unreasonable seizures was violated when Campion "seized" his driver's license by revoking it.  Although Plaintiff refers to his Fourth Amendment right, this Court interprets this claim to be more completely described in those portions of the Amended Complaint that related to the procedures used by Campion in making the revocation decision.  Therefore, this Court construes this claim to be synonymous with Claim Seven and would recommend it be dismissed with prejudice on the same grounds outlined in Section II.C.1. above.

### 3.    Claim Nine – Excessive-Fine Claim

---

(Footnote Continued from Previous Page)
revocation . . . has no effect upon the availability of judicial review under this section."  Minn. Stat. § 169A.53, subd. 1(b).

In Claim Nine, Plaintiff claims that the costs he is required to pay to obtain reinstatement of his license now that it has been revoked constitutes and excessive fine in violation of the Eighth Amendment. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The term "fine" as used by the drafters of the Eighth Amendment was intended to mean payment to a sovereign as punishment for some offense. *Browning-Ferris Indus. of Vt. v. Kelco Disposal, Inc.*, 492 U.S. 257, 267-68 (1989). This provision applies to excessive civil fines. *See Hudson v. United States*, 522 U.S. 93, 103 (1997). In the Eighth Circuit, a party seeking to have a fine declared for Eighth Amendment purposes, must demonstrate that the fine is grossly disproportionate to the offense. *See United States v. Dodge Caravan Grand SE/Sport Van, VIN No. 1B4GP44G2YB7884560*, 387 F.3d 758, 763 (8th Cir. 2004) ("The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.") (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). Assuming that the Eighth Amendment applies to the fee Plaintiff complains of, this Court concludes that Plaintiff has failed to plead any facts from which it can be inferred that the $680 reinstatement fee Minnesota requires him to pay to renew his driver's license is grossly disproportionate to his driving-while-impaired crime. The gravity of the driving-while-impaired offense dwarfs the fee imposed by the State of Minnesota for Plaintiff's offense. This Court

recommends that Claim Nine be dismissed with prejudice for failure to state a claim.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.      Commissioner Michael Campion's Motion to Dismiss (Doc. No. 14), be **GRANTED**;

2.      The Motion by Defendant Bruce Andershon to Dismiss Complaint (Doc. No. 25), be **GRANTED**;

3.      The Motion by Defendant James M. Dudgeon, Jr. to Dismiss Complaint (Doc. No. 27), be **GRANTED**; and

4.      This action be **DISMISSED IN ITS ENTIRETY** on the following terms:

      a.      Claims One, Two, Three, Four, Five, and Six be **DISMISSED WITHOUT PREJUDICE**; and

      b.      Claims Seven, Eight, and Nine be **DISMISSED WITH PREJUDICE**.

Dated: May 22, 2009

          *s/ Jeffrey J. Keyes*
          JEFFREY J. KEYES
          United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 8, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a *de novo* determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of this Report and Recommendation.